IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMERICAN HUMANIST ASSOCIATION ) <br> Washington, D.C., ) <br> ) <br> and ) <br> ) <br> SHARI WEBBER-DUNN ) <br> Topeka, Kansas, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOSEPH NORWOOD ) <br> Secretary, Kansas Department of Corrections ) <br> Topeka, Kansas ) <br> in his official capacity, ) <br> ) <br> and ) <br> ) <br> SHANNON MEYER ) <br> Warden, Topeka Correctional Facility ) <br> Topeka, Kansas ) <br> in her official capacity, ) <br> ) <br> and ) <br> ) <br> KEVIN KEITH ) <br> Facility Service Administrator, ) <br> Topeka Correctional Facility, ) <br> Topeka, Kansas, ) <br> in his official capacity, ) <br> ) <br> and ) <br> ) <br> JOHN DOE, ) <br> in his official capacity, ) <br> ) <br>       Defendants. ) | Case No. 2:17-cv-2554 |

**COMPLAINT**

COME NOW Plaintiffs American Humanist Association and Shari Webber-Dunn, by counsel, and for their cause of action against Defendants Joseph Norwood, Shannon Meyer, Kevin Keith, and John Doe, state and allege as follows:

### DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby request that the trial of this cause be held in Kansas City, Kansas.

### INTRODUCTION AND PRELIMINARY STATEMENT

1. This action arises out of and challenges Defendants' policy, custom, and practice of sponsoring the Christian religion at the Topeka Correctional Facility – a state-run institution – by displaying religious messages, images, and symbols on public bulletin boards and elsewhere on prison grounds; encouraging and facilitating prayer requests; displaying a large wooden cross in a multi-purpose room that is used for various purposes throughout the week including visitation with non-inmates; frequently choosing and broadcasting Christian movies on facility televisions as well as inmates' privately owned televisions; and otherwise imposing Christian beliefs on inmates, all in violation of the Establishment Clause of the First Amendment to the United States Constitution, as applied to Kansas by the Fourteenth Amendment.

2. As provided for by 42 U.S.C. § 1983, to redress this constitutional violation, Plaintiffs seek nominal damages, injunctive relief, and declaratory relief under 28 U.S.C. § 2201 against Defendants, together with recovery of attorneys' fees, costs, and expenses as provided for by 42 U.S.C. § 1988.

**PARTIES**

3. Plaintiff American Humanist Association ("AHA") is a nonprofit § 501(c)(3) organization incorporated in Illinois with a principal place of business at 1821 Jefferson Place NW, Washington, D.C.  AHA is a membership organization with over 160 chapters and affiliates nationwide and over 34,000 members, including Plaintiff Shari Webber-Dunn.  AHA promotes humanism and is dedicated to advancing and preserving separation of church and state and the constitutional rights of humanists, atheists, and other freethinkers.  AHA brings this action to assert the First Amendment rights of its member.

4. Plaintiff Shari Webber-Dunn is an inmate at the Topeka Correctional Facility ("TCF") in Topeka, Kansas.  She is a member of AHA and she is registered with TCF as a practicing Thelemite.

5. Defendant Joe Norwood is the Secretary of the Kansas Department of Corrections.  By virtue of K.S.A. § 75-5203(a), Secretary Norwood is the chief executive officer of the Kansas Department of Corrections.  Under K.S.A. § 75-5205, Secretary Norwood has the general supervision and management of the correctional institutions of the state.  Defendant Norwood is sued in his official capacity.

6. Defendant Shannon Meyer is Warden at TCF.  In accordance with K.S.A. § 75-5246, wardens are appointed by the Secretary of Corrections.  As provided by K.S.A. § 75-5252, subject to the general supervision of the Secretary of Corrections and applicable rules and regulations adopted by the Secretary, the warden at each correctional institution, including Warden Meyer at TCF, has the duty to, *inter alia*, oversee the government and discipline of the correctional institution; to give necessary directions to the officers and

employees and to examine whether they have been careful and vigilant in their respective duties; and to examine into the state of the correctional institution and for the health, conduct, and safekeeping of inmates. Further, K.S.A. § 75-5256 provides that the warden of each institution may issue orders subject to the provisions of law and the rules and regulations adopted by the Secretary of Corrections as the warden may deem necessary for the government of the institution and the enforcement of discipline therein. Rules, regulations, or orders, other than those relating to emergency or security procedures are to be published and made available to all inmates. Defendant Meyer is sued in her official capacity.

7. Defendant Kevin Keith is the Facility Service Administrator at TCF. On information and belief, he also acts as Assistant to Warden Meyer. Defendant Keith is sued in his official capacity.

8. Defendant John Doe is an unknown corrections official or administrator who has responsibility for overseeing that the First Amendment rights of inmates are not violated by Corrections Department or individual institution rules, regulations, policies, procedures, practices, customs, or usages. Defendant Doe is sued in his official capacity.

9. At all times relevant hereto, and in acting or failing to act as alleged herein, all Defendants were acting under color of state law.

## JURISDICTION AND VENUE

10. Because this case arises under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983, and therefore presents a federal question, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

11. This Court has personal jurisdiction over Defendants because the unlawful acts

4

alleged in this Complaint were committed in Topeka, Shawnee County, Kansas which lies within the District of Kansas.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because, on information and belief, at least one of the defendants resides in the District of Kansas and because a substantial part of the acts giving rise to Plaintiffs' claims occurred in Topeka, Shawnee County, Kansas, which lies within the District of Kansas.

## FACTS

13. As alleged, *supra* at ¶ 4, Plaintiff Webber-Dunn is an inmate at the TCF where she has served 23 years of her sentence. She is a member of AHA and she is a practicing Thelemite.

14. The TCF is a state-run correctional facility and is the only women's prison in the State of Kansas.

15. Between January 10, 2017 and August 8, 2017, on which date Webber-Dunn was moved to another dormitory/living unit – J Cell – Webber-Dunn was assigned to C-Dorm, Room 143, one of six dorms (A-E and G) a part of what is referred to as the Central Unit. Prior to January, 2017, Webber-Dunn lived in the I-J Compound. Even though as of the time of filing this Complaint, Webber-Dunn is no longer living in Central Unit, C-Dorm, she can be transferred back to Central Unit, C-Dorm at any time at the discretion of one or more of the defendants. Accordingly, even though she is not currently assigned to C-Dorm, the facts and circumstances giving rise to Plaintiff Webber-Dunn's claim are "capable of repetition,

yet evading review"[1] exception to the mootness doctrine. Therefore, it is not mooted by her reassignment to J-Cell. *See also*, *infra* at ¶ 32.

16. In C-Dorm, there is a very large bulletin board on the back wall of the day room.

17. The day room is a public area where inmates go to watch TV, cook meals in the microwaves, sit at tables and visit, iron their clothing, ride an exercise bike, and other activities.

18. The large bulletin board is supposed to be used for posting facility notices such as chow hall mean menus, clinic schedules, parole information, program and class schedules, job changes, etc.

19. However, throughout Webber-Dunn's assignment to C-Dorm, there were three Christian prayers stapled to the large bulletin bulletin board in the day room. The three prayers are titled: A Morning Prayer; An Evening Prayer; and a Prayer for Those in Authority. They read as follows:

   a. A Morning Prayer

   O Heavenly Father, I thank You for another day to witness Your glory. In this ~~cold, dark~~[2] prison, it is Your loving light that sustains me, guides me, and protects me. You lift up my spirit, that today will provide me an opportunity to shine Your light for someone else.

   I seek Your will, Lord, in this community, and in this environment. In all things I praise You, for I know the trials I face each day will make ms stronger, more faithful, and steadfast in my walk with You. I pray as we walk together today, that I shall not stray from Your side no matter what the

---

[1]*Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515 (1911).

[2]The words "cold, dark" were crossed-out with black ink on the posted prayer, but were sufficiently legible to be deciphered.

6

temptation or situation.

Give me the strength and will to exemplify Your loving spirit to others, no matter how I am received. Let might light shine all day, so my fellow prisoners and the prison staff may see Your mighty work in changing my life. I have none other before You, Lord, and I shall face this day by loving my brother as I love myself. Thank You for walking with me. Amen.

b. An Evening Prayer

My Father in Heaven, as I reach the end of another day, I humbly pray my walk throughout this prison has made a difference to someone, as a beacon of Your ever-glowing love. You are indeed a mighty God, and I praise You.

I pray that You will hold me in Your arms tonight. Fill me with the renewed strength of eagles, so tomorrow I may soar while witnessing to others and doing my best to do Your will. Not mine, but thine be done, O Lord. Amen.

c. A Prayer for Those in Authority

Dear Lord, I offer this prayer for those who hold authority over me, that they might exercise it with reason, compassion, and restraint. I pray You may infuse their thoughts with messages of love, hope, and success. I pray that You may inspire our prison administrators, case managers, corrections officers, and staff with the insights to do Your will in all things.

I ask You to help me accept, more willingly, the supervision and direction my superiors are required to provide. I ask You for patience and understanding in dealing with the corrections staff I encounter each day. Amen.

20. During the week of July 23, 2017, a notice was posted on the dayroom bulletin board, signed by the TCF Chaplain Charlotte Maxwell, soliciting donations to the Spiritual Library which read:

The Spiritual Library is looking to increase their library. We are looking for donations from you!! have you run into the problem of having too many books on your property file? Do you want to get something new but can't? Well, we have the perfect answer for you! Donate to the Chaplain's library! Don't forget to go through the property office and get your books removed from your property file!

On the right side of the notice were the words: GOD BLESS AND THANK YOU.

21. During the first week of August, 2017, the dayroom bulletin board posted a flier titled "Daughters of Zion Calling" which contained Christian iconography, scripture, prayer, and a personal testimony.

22. A second, smaller bulletin board that is placed on the north entry-hall wall so that every inmate on the entire dorm (approximately 108 inmates) must pass by it in order to use the janitor closet where mops, brooms, buckets, dustpans, and other cleaning implements are stored. This particular bulletin board is used solely for the display and dissemination of Christian ideas and images.

23. The small bulletin board also has a manila envelope tucked behind the upper left side bearing the label "Prayer Requests". A note stuck on it says, "Do not be anxious about anything, but in everything, by prayer and petition, with thanksgiving, present your requests to God. Philippians 4:6 (niv)."

24. A sign attached to the top of the small bulletin boards wood frame reads, "By taking something off this board, you could be stealing someone else's blessing. Let's encourage one another . . ."

25. There are numerous Christian messages displayed on this smaller bulletin board. They read as follows:

- Don't Worry – God is never blind to your tears, never deaf to your prayers, and never silent to your pain. He sees, He hears, and He will deliver.

- It's not about a bunny. It's about a lamb. Christmas was the Promise. Easter is the Proof!

- In happy moments, praise God. In difficult moments, seek God. In quiet moments, trust God. In every moment, Thank God.

8

- The nicest place to be is in someone's thoughts, the safest place to be is in someone's prayers, the best place to be is in God's hands!

- Have you prayed about it as much as you have talked about it?

- When God closes one door He opens another.

- You are beautiful.  Don't allow anyone to tell you less.  – – –  God made you.  Hope anchors the soul.  Hebrews 6:19 – – – Keep watch over your heart.  It's where life starts.  Prov. 4:23

- (Accompanying a picture of a cross)  RISEN  Death, where is your sting?

- Our God has All power to defend you,
  All wisdom to direct you,
  All mercy to pardon you,
  All grace to enrich you,
  All righteousness to clothe you,
  All goodness to supply you,
  All happiness to crown you,
  All love to SAVE YOU!

- In everything give thanks, for this is God's will for you in Christ Jesus.

- Walk with God and you will never walk alone.

- Warning:  in case of rapture this car will be unmanned.

- (Accompanying a picture with Jesus and a child)  I love you . . . You are mine . . . Your name is written upon My Heart.  Your prayers are precious to Me.  Your life is in My Hands.  I am always with you.  I am nearer to you than your own heart.  I gave My Life so that you might live forever with me.  So can I ask you to be Mine?
   – – –  Jesus

- Dear God, I'm not a religious person but I believe in you.  I don't have the answers but I now you do, so from this point on, I want to rely on you.  Please forgive me, I surrender to you, I make Jesus y Lord and Savior, give me Your peace, make all things new and I will follow you, all the days of my life.  In Jesus' name.

- I have too many flaws to be perfect.  But I have too many blessings to be ungrateful.

- God has a reason for allowing things to happen.  We may never understand

His Wisdom, but we simply have to trust His will.

26. The smaller bulletin board also has several religious pictures displayed:

- Jesus carrying a cross
- Three crosses
- Jesus' empty tomb
- Jesus with wings among a group of angels blowing trumpets
- The gates of Heaven
- Jesus hugging a person

27. Not only does the TCF post Christian propaganda on bulletin boards in a state-owned and operated correctional facility, inmates are under threat of punishment if they are caught removing anything from the bulletin boards, even it if violates their Establishment Clause rights.

28. The Department of Corrections enforces Kansas Administrative Regulations including KAR 44-122-801 which provides:

Bulletin Boards

(a)  No inmate shall remove any item from any bulletin board.  Each inmate shall be held responsible for compliance with orders published by posting on the bulletin boards.  Bulletin boards shall be used by and shall be under the exclusive control of the warden or designee.

(b)  Violation of this regulation shall be a Class II offense.

29. Punishment for breaking this rule is specified under KAR 44-12-1302 (b).

(b)  The penalty for a class II offense may be any one or any combination of the following, unless prohibited in this subsection:

(1)  disciplinary segregation, not to exceed 15 days;

(2)  loss of good time credits, not to exceed three months;

(3)  extra work without incentive pay for not more than two hours each day, not to exceed 20 days;

(4) work without incentive pay, not to exceed five days. This penalty shall not include a fine and shall apply only to ordinary inmate work assignments;

(5) restriction to inmate's own cell for a period, not to exceed seven days;

(6) restriction from privileges, not to exceed 30 days;

(7) a fine not more than $15.00, unless prohibited by paragraph (b)(4);

(8) restitution of at least $3.00; or,

(9) an oral or written reprimand.

30. The Central Unit basement (lower level) has a large room the primary purpose of which is to serve as Central Unit's weekend and holiday visitation area. When not used for visitation, it serves as a place for Christian worship services and secular program meetings that take place during the week. It also serves as a place for inmates to hold special retreats and as a tornado shelter for the entire facility. Many people frequent the room including inmates, staff, visitors, and volunteers.

31. A huge – approximately eight feet tall – wooden Christian cross is displayed in the Central Unit basement room described in paragraph 30. Even though inmates and visitors of all faiths are in the visitation room every weekend, the cross is never covered or removed when the room is not being used for a religious service. Plaintiff Webber-Dunn views the cross as disrespectful to all non-Christians and as echoing the oppressive message that Christianity looms over the inmates at all times and they are powerless to do anything about it.

32. On information and belief, religious materials are found in other dorms. Plaintiff Webber-Dunn also observed Christian propaganda in I-Cell and J-Cell during the 20-plus

years she lived in them.  Materials were stapled to bulletin boards, written on dry-erase boards, and even hung as "wall art" displayed in the J-Cell multi-purpose room.

33.  There are other examples of the proselytizing activity focusing on Christianity at TCF.

34.  On July 30, 2017, Plaintiff Webber-Dunn observed the following Christian literature on the north side of the C-Dorm officer's desk in the slots reserved for Form 9s, Grievance Forms, Medical Sick Call, and Mental Health slips:

- June and August, 2017 issues of Warcry (a Salvation Army publication);
- June, 2017 issue of Believer's Voice of Victory;
- August, 2017 issue of Guideposts; and,
- Hearts of Hope newsletter from Overcomer Covenant Church

There were no state forms of any kind on the slots; just the Christian reading material.

35.  On weekends, TCF plays and replays two different movies that are shown on all facility day room televisions and also on the private televisions owned by inmates.  The activities department frequently chooses Christian movies.  For example, during the weekend of August 4-6, 2017, they showed I'M NOT ASHAMED (Visible Pictures 2016), a film recognized by reviewers as containing Christian messages.  Because inmates are only allowed to view movies that are rated G or PG13, the TCF employees who select the movies are aware of the content of the films the facility shows.

36.  When inmates who participate in the "No Strings Attached" program gather to learn to crochet and make items that are donated to charity, Christian music is played while the inmates crochet.

37. In order to receive clean laundry, inmates go to a large pick-up counter where two inmate laundry workers hand out bundles of clothing and linens. The laundry workstation behind the counter consists of shelves that are marked A-L on the right side and M-Z on the left. Throughout Plaintiff Webber-Dunn's stay in the Central Unit, there have been numerous Christian messages and/or pictures that are taped to the middle row of shelves, for everyone to see when they pick-up clean laundry. Beginning on July 13, 2017, there was a picture that has been photocopied from a Christian coloring book. In bold, brightly-colored lettering, it states:

> I CAN DO ALL THINGS THROUGH CHRIST WHO STRENGTHENS ME.
>
> Philippians 4:13

38. The laundry is a workplace. There are never any religious services held there. Inmates of all beliefs must drop off and pick up their laundry three times a week. There is no valid reason why Christian materials should be displayed there in a state-owned and operated correctional facility.

39. In the TCF Central Unit Administration near the rear inmate entrance, there is a large black magazine rack. The rack is filled with free Christian literature including monthly church newsletters, daily devotional guides, Bible tracts, various magazines, prayer cards, pamphlets, etc., some in both English and Spanish. A sign above the rack reads:

> Please Be Respectful
> Take Only One Per Person
>
> We have a limited supply, so please remove only one for your own personal use, and leave the rest for others. The literature provided is for ALL TCF-accommodated religious groups. Please do not throw away any religious literature. Thank you.
> Spiritual Services

Plaintiff Webber-Dunn has seen only Christian material on the rack.  TCF does not give away free literature that comes from an "unaccommodated" religious source.  KDOC IMPP 10-110D, Attachment A, identifies the accommodated religions.

40. Some time ago, Plaintiff Webber-Dunn had to hire an attorney at the cost of several hundred dollars to ensure that she was allowed to have KDOC Internal Management Policy and Procedure (IMPP) pre-approved religious items for her religion (Thelma).  The Department of Corrections was compelled to comply with the IMPP and she was finally granted permission to purchase a 3½-inch statute of Lakshmi.

41. On June 30, 2017, Plaintiff Webber-Dunn submitted an Inmate Request to Staff Member (Form 9) asking for the removal of the religious items from the bulletin boards and for the wooden cross to be covered when the Central Unit basement visitation room is not being used for Christian religious services.  The Form 9 was submitted to Unit Team Manager Ms. Hecht and Plaintiff Webber-Dunn discussed the issues she presented with Hecht.  On July 6, Hecht responded, "I have been following up.  If info becomes available, I will advise."

42. On July 25, 2017, Plaintiff Webber-Dunn and Unit Team Manager Hecht spoke again and Hecht inquired as to whether Webber-Dunn had heard anything in regard to the church-state separation issues Webber-Dunn had presented.  When Webber-Dunn told Hecht, "No," Hecht replied that she was surprised because she had looked into the matter and found the cause to be valid.  Hecht expressed that she was happy to see that Webber-Dunn was being passionate about the issue and that she hoped to see some changes soon.

43. In that conversation, Unit Team Manager Hecht told Webber-Dunn that she had

prepared a narrative concerning the church-state violations and sent it to her boss, Classification Administrator Bennett, Facility Service Administrator Kevin Keith, and to Chaplain Maxwell.  As of July 26, 2017, Plaintiff Webber-Dunn had not heard anything from any of those individuals and no action had been taken to correct the problems prior to Webber-Dunn being moved to J-Cell on August 8, 2017.

### CAUSE OF ACTION

44. Plaintiffs hereby adopt, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 43 above.

45. Defendants' policy, practice, and custom of displaying religious messages, images, and symbols on public bulletin boards and elsewhere on prison grounds; encouraging and facilitating prayer requests; displaying a large wooden cross in a multi-purpose room that is used for various purposes throughout the week including visitation with non-inmates; frequently choosing and broadcasting Christian movies on facility televisions as well as inmates' privately owned televisions; and otherwise imposing strong Christian values on inmates, all as detailed, *supra* at ¶¶ 16-39, violates the Establishment Clause of the First Amendment to the United States Constitution.

46. Defendants' actions, failures to act, and policies described above lack a secular purpose, have the effect of promoting, favoring, and endorsing religion – particularly Christianity – over non-religion, and result in an excessive entanglement between government and religion, thus violating the Establishment Clause.

47. Defendants' actions, failures to act, and policies described above create a coercive atmosphere where inmates are pressured to spend their time in a highly religious

atmosphere and to participate in religious activities and prayers, thus violating the Establishment Clause.

48. Plaintiffs have been damaged as a direct and proximate result of Defendants' actions, inactions, and policies as alleged above.

49. Because Defendants have not acknowledged that their actions, inactions, policies, practices, and customs as above alleged are unconstitutional, there is a likelihood that Defendants will continue to or will again engage in the unconstitutional conduct alleged *supra* at ¶¶ 16-39 in the future absent declaratory and injunctive relief prohibiting such unconstitutional conduct, policies, practices, and customs, imperiling Plaintiffs' constitutional rights under the Establishment Clause.

50. In violating the Establishment Clause as described above, Defendants acted under color of law in violation of 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court, after a trial of Plaintiffs' claim, grant the following relief:

    a. Enter a declaratory judgment that Defendants' actions and policies described above violate the Establishment Clause of the First Amendment to the United States Constitution;

    b. Enter a permanent injunction enjoining Defendants, their successors, and any person in active concert with Defendants from intentionally, knowingly, recklessly, or negligently allowing the continued display of religious messages, images, and symbols on public bulletin boards and elsewhere on prison grounds; from

encouraging and facilitating prayer requests; from displaying a large wooden cross in a multi-purpose room that is used for various purposes throughout the week including visitation with non-inmates; from frequently choosing and broadcasting Christian movies on facility televisions as well as inmates' privately owned televisions; and from otherwise imposing strong Christian values on inmates at the TCF and at all men's correctional facilities throughout the state;

 c. Enter judgment for Plaintiffs for their nominal damages;

 d. Award Plaintiffs their attorneys' fees, expenses, and costs reasonably incurred in prosecuting this action as provided by 42 U.S.C. § 1988(b) and,

 e. Award Plaintiffs such other relief as this Court deems just and proper.

        Respectfully submitted,

        ARTHUR BENSON & ASSOCIATES

        By  s/ Arthur A. Benson II

        By   s/ Jamie Kathryn Lansford
        Arthur A. Benson II #21107
        Jamie Kathryn Lansford #31133
        4006 Central Avenue
        Kansas City, Missouri 64111
        (816) 531-6565
        (816) 531-6688 (telefacsimile)
        abenson@bensonlaw.com
        jlansford@bensonlaw.com

        and

        AMERICAN HUMANIST ASSOCIATION
        APPIGNANI HUMANIST LEGAL CENTER

By  s/ David A. Niose
David A. Niose
MA Bar: 556486 / D.C. Bar 1024530
American Humanist Association
1821 Jefferson Place NW
Washington, D.C. 20036
(202) 238-9088 ext 119
(202) 238-9003 (telefacsimile)
dniose@americanhumanist.org

*Pro Hac Vice pending*